**Thomas E. REIBER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–955.**

United States Court of Veterans Appeals.

Argued March 13, 1995.

Decided April 14, 1995.

Sean T. Connaughton, Washington, DC, for appellant.

Carolyn F. Washington, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and David W. Engel, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

NEBEKER, Chief Judge:

This appeal arises from a September 9, 1993, Board of Veterans' Appeals (Board or BVA) decision that the appellant's claim for secondary service connection for a low back disorder was not well grounded. The Court holds as a matter of law that the Board erred in not finding the appellant's claim well grounded. We, therefore, will reverse the Board's decision and remand the matter for further adjudication.

## I. FACTS

The appellant served on active duty from December 1972 to May 1974. Record (R.) at 5. While in service, he fractured his left ankle twice. He was awarded service connection for residuals of the left ankle fracture shortly after service and granted a 10% disability rating. R. at 39. In January 1976, the appellant had reconstructive surgery on his lateral left ankle at a VA hospital. R. at 52. A VA progress note from April 1990 noted that his left ankle was unstable, and that the appellant's "disability with regard to the left ankle is becoming progressively worse, with increasing instability and pain. Surgical treatment may eventually be necessary[,] but is not indicated at this time." R. at 62. In August 1990, the appellant was given an orthopedic examination by VA. R. at 65. His chief complaint was "[p]ain in [his] left ankle with giving way." Ibid. The examiner noted that the appellant had a slight drop-foot-type gait, "with difficulty clearing his toes in swing phase," and that he

had "[f]ibular collateral instability as a result of the [in-service] injury." R. at 65–66. After this examination, the appellant's rating was increased from 10% to 20%. R. at 69. That rating decision noted in the facts section: "Instability, with degenerative changes, slight footdrop, left ankle pain, and atrophy left calf muscle are shown." *Ibid.* The appellant, who was not satisfied with this rating, submitted a letter from a private physician, Thomas W. Wolff, D.P.M., who noted that the appellant "has severe left foot drop. During gait analysis the left foot drags on the ground and frequently 'folds' under causing the patient to trip forward." R. at 81.

In November 1991, the appellant reported for another VA examination at which time he reported as one of his complaints that his left foot drags and he trips over it. R. at 109. He also stated that "he is unable to hike in the woods secondary to his left ankle pain and instability." R. at 111. The VA examiner found "moderate clinical instability laterally of the left ankle," *ibid.*, and diagnosed "mild to moderate instability, left ankle, secondary to [old left ankle injury]," R. at 112. In the discussion section of the examination report, the examiner noted that no records were available to the examiner, but stated, "I do not relate the apparent foot drop beginning in the 1980's to a surgical procedure performed in 1975, nor to an injury received prior to that time." *Ibid.* The examiner suggested that the appellant's C-file and other records be made available and an electromyogram and nerve conduction study of the left lower extremity be done to dispel any doubts about any neurological etiology of the appellant's foot drop. R. at 113. The appellant's rating for his left ankle was continued at 20%. R. at 180.

In November 1992, the appellant filed a claim for secondary service connection for a back condition because of a fall at work sometime in late February 1992. R. at 176, 183. He stated that his left ankle gave way, causing him to fall. R. at 176. He submitted records from a private physician, Dr. Molitor, who had diagnosed a herniated disc after this fall. R. at 177. In a workman's compensation form for the herniated disc filled out by Dr. Molitor, the doctor noted with regard to the appellant's back injury that his herniated disk was related to his fall

downstairs at work. *Ibid.* In an examination report dated May 1992, Dr. Molitor noted that the appellant's chief complaint was radiating left leg pain which had fairly immediate onset after he fell downstairs at work. R. at 183. A magnetic resonance imaging revealed a "[p]robable disk bulge [lumbar vertebra]5 on the left" and "[d]isk bulge [lumbar vertebra]4 on the right." R. at 185. (Lumbar vertebrae are "any of the vertebrae situated between the thoracic vertebrae above and the sacrum below that in man are five in number." WEBSTER'S MEDICAL DESK DICTIONARY 396 (1986) [hereinafter WEBSTER'S].)

The record on appeal reveals that in medical records dated August 1991, the appellant reported that he had had a motorcycle accident in 1978 in which he fractured his lower lumbar vertebrae and had had a splenectomy with an exploratory laparotomy, but that he had fully recovered from the accident. R. at 99. In October 1991, the appellant was examined after rafters fell on him. R. at 135. X-rays showed that his thoracic spine was normal. *Ibid.* (Thoracic vertebrae are "any of the 12 vertebrae dorsal to the thoracic region and characterized by articulation with the ribs." WEBSTER'S at 715.)

The appellant's claim for secondary service connection for his back was denied. R. at 193. In his Notice of Disagreement to that rating decision, the appellant explained that he had not claimed that his back had not been injured previously, just that his back had suffered additional injury due to his fall. R. at 196. On appeal, the Board found that his claim for secondary service connection for his back condition was not well grounded because there was no competent medical evidence to make plausible the appellant's claim that his back condition is the result of his service-connected left ankle's giving way, causing him to fall.

## II. ANALYSIS

Under 38 C.F.R. § 3.310(a) (1994), secondary service connection shall be awarded when a disability "is proximately due to or the result of a service-connected disease or injury . . . ." Additional disability resulting from the aggravation of a non-service-con-

nected condition by a service-connected condition is also compensable under 38 C.F.R. § 3.310(a). *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc). A claim for secondary service connection, like all claims, must be well grounded. 38 U.S.C. § 5107(a); *see Proscelle v. Derwinski*, 2 Vet.App. 629, 633 (1992). To be well grounded, there must be sufficient evidence to justify a belief by a fair and impartial individual that the claim is plausible. *Tirpak v. Derwinski*, 2 Vet.App. 609, 610–11 (1992). It is not necessary for a claimant to submit evidence which conclusively proves his claim to be well grounded. *Id.* at 611; *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) ("Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]."). Whether or not a claim is well grounded is a question of law which this Court reviews de novo. *Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993).

In its decision here, the Board stated,

[T]he veteran asserts there is a relationship between his service-connected left ankle disability and the low back disorder related to the 1992 accidental fall, but he is a layman and does not have the competence to offer an opinion on medical causation. *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992).

. . . .

In order for a claim to be considered well grounded, it must be supported by evidence not just allegations. *Tirpak[, supra].* Here, the veteran makes a mere allegation that his left ankle disability caused him to fall in 1992, injuring his back. Instability of the left ankle is a symptom of the service-connected disability but this fact raises only a speculative theory that the left ankle disorder was the proximate cause of the accidental fall and back injury in 1992, instead of any number of other causes for the incident.

R. at 7–8.

There are two steps in the appellant's argument for secondary service connection, and supporting evidence is required for each step. First, the appellant states that it was his left ankle which caused him to fall and, second, he claims that it was that fall which resulted in his current back condition. The record shows that both VA and a private doctor found the appellant's left ankle to be unstable. The Secretary does not contest the fact that the appellant's ankle was unstable, but argues that the appellant's foot drop was not service connected and it is plausible that the foot drop caused the appellant's fall. Secretary's brief at 9. The Secretary relies on the 1991 VA examination for this conclusion. *Ibid.* However, the strength of the VA examiner's statement that he did not believe that the appellant's foot drop was related to his surgery at the VA hospital or to his prior injury is diminished by the notation in that examination report that he did not have any of the appellant's records before him and he believed further testing should be done to determine the etiology of the appellant's foot drop. Moreover, whether the appellant's foot drop problem is related to his service-connected injury is irrelevant for the purpose of determining whether the appellant's claim for secondary service connection is well grounded. There is evidence in the record that the appellant's service-connected disability made his left ankle unstable, and, accordingly, the ankle occasionally "gave way" or "gave out," *see* R. at 31, 62, which is precisely what the appellant claimed happened to him in his application for benefits. R. at 176 ("Please find that sometime in [sic] earlier this year, my ankle gave out and I suffered a back injury as a result.").

■ Whether the appellant's fall may have caused his current back condition is a question of medical causation. "[W]here the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." *Grottveit*, 5 Vet.App. at 93 (citation omitted). With regard to whether his current back condition was caused by the fall at work and not some prior accident, Dr. Molitor noted on the appellant's workman's compensation form that all of the appellant's back problems stemmed from his fall at work. R. at 177. The record before us shows that the appellant had previously reported that he had fully recovered from his motorcycle accident in 1978, and that the x-rays of the thoracic vertebrae taken after the 1991 incident in which the rafters fell on him showed that his thoracic spine was within normal limits. (Apparently,

there was no concern regarding his lumbar spine after that accident.) Thus, the appellant has submitted competent medical evidence, as required by *Grottveit,* making plausible his claim that the fall resulted in his current back disability.

In *Schroeder v. Brown,* 6 Vet.App. 220 (1994), we held that the appellant's claim for secondary service connection for a saw injury to the right wrist was well grounded. The appellant claimed that it was his service-connected neurological inability to feel his hand that made the saw injury so severe because he could not feel the saw cutting his wrist until his hand was nearly severed. *Id.* at 223. We found that the appellant had submitted medical evidence which tended to show that his service-connected disability compromised his protective reaction in the hand where he suffered the saw injury, and that this fact created the possibility that the saw injury was a secondary result of his service-connected hand injury; we found, therefore, that his claim was well grounded. *Id.* at 224. In the instant case, the appellant has offered a plausible explanation, bolstered by sufficient evidence, as to why his back condition should be considered service connected. We see no reason that just because there might exist another plausible explanation, the appellant's claim does not cross the threshold of being well grounded. It must be remembered that conclusive evidence is not needed for a claim to be well grounded. *See Tirpak, supra; Murphy, supra.* Therefore, we hold that the Board erred in deciding that the appellant's claim was not well grounded. In so holding, we, of course, make no determination as to the appellant's claim on the merits.

### III. CONCLUSION

Accordingly, the Board's decision that the appellant's claim is not well grounded is REVERSED and the matter REMANDED for adjudication.