John E. LOCHER, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–1097.

United States Court of Veterans Appeals.

Nov. 26, 1996.

Valerie L. Hughes, Bellevue, WA, was on the pleadings for the appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., Washington, DC, were on the pleadings for the appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam veteran John E. Locher, has applied for attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). In response, the Secretary asserts that he does not contest the facts that the appellant has obtained a "final judgment" within the meaning of the EAJA (28 U.S.C. § 2412(d)(2)(G)) and that the appellant is a "prevailing party" (28 U.S.C. § 2412(d)(2)(B)); however, the Secretary contends that he was substantially justified in the underlying merits administrative decisionmaking and litigation in this

Court, that there are special circumstances that make an attorney fees award unjust, and that, in the event the appellant is determined to be entitled to an EAJA award, the fees requested are excessive and should be reduced. The Court has jurisdiction to award attorney fees pursuant to 28 U.S.C. § 2412(d)(2)(F) as amended by section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992). For the reasons that follow, the Court will deny the application for attorneys fees and expenses, because the Court finds that the Secretary's positions were substantially justified.

## I. Background

A November 1994 Board of Veterans' Appeals (BVA or Board) decision denied as not well grounded the veteran's claim for service connection for a back and left-arm condition as secondary to a service-connected left-leg condition. R. at 6. The Board reasoned:

> The veteran now attributes his August 1991 fall from a roof, which occasioned his injuries to the low back (vertebral fractures) and left upper extremity (radius fracture) to his left leg giving way. H[e] attributes this giving way to the service[-]connected gunshot wound residuals. However, aside from his own statement, there is no evidence to attribute the fall to the service[-]connected disability. The records of treatment subsequent to his fall do not implicate the service[-]connected disability. Moreover, while the veteran is competent to attribute his fall to his leg giving way, as a layman, he is not competent to relate the giving way to his service[-]connected disability. The latter is a medical determination which is lacking in the current case.

R. at 7.

On November 28, 1994, the appellant appealed the Board's decision to this Court. In April 1995, the Secretary filed the record on appeal (ROA). The following month, the appellant's counsel entered her appearance. In July, the appellant's counsel counter designated the record, and the following month, a supplemental ROA was filed as was the appellant's brief. On October 4, 1995, the parties filed a joint motion proposing that the Board decision be vacated and the matter be remanded for development, if appropriate under 38 U.S.C. § 5107(a), and for readjudication. The joint motion stated: "The parties agree that the basis for a remand in this case is provided by the Court's recent decision in *Reiber v. Brown*, 7 Vet.App. 513 (1995)." The joint motion also cited *Harvey v. Brown*, 6 Vet.App. 390 (1994) (a Court opinion predating the Board decision). The motion stated:

> [I]t appears that the BVA decision failed to recognize that the Appellant's lay statements as to the sequence of the events leading to his fall (i.e., while working on his job as a roofer, his service-connected left leg gave out and he fell (R. at 179)) may be sufficient to present a well-grounded claim for secondary service connection for the resultant injuries to his arm and back, as provided under *Reiber, supra*. It is noted, however, that the Board's decision in the instant case preceded the *Reiber* decision.
>
> Thus, a remand is required in order to allow the Board the opportunity to apply the two-step analysis for a secondary service connection claim. *Id.* At 516.
>
> . . . .
>
> On remand, Appellant should be free to submit additional evidence, comment, and argument in accordance with this Court's holdings in *Reiber, supra, Harvey, supra*, and *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

On October 6, 1995, the Court granted the joint motion, vacated the Board decision and remanded the matter, and stated that the EAJA application was due by November 6, 1995.

On October 31, 1995, the appellant filed the EAJA application that is the subject of this opinion. In the application, he (1) made a showing that he was a "prevailing party" by asserting such status and by demonstrating how he had attained such status—that is, he had sought reversal or remand of the Board decision and the Court had vacated the Board decision and remanded the matter, thus showing that he had achieved "some of the benefit sought in bringing suit" (*Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994)); (2) made a showing that he is a party eligible for

an award under the EAJA by attaching a declaration stating that his net worth was less than $2,000,000 when the appeal was filed on November 28, 1994; (3) asserted that the position of the Secretary was not substantially justified; and (4) included an itemized statement of the fees sought, supported by an affidavit from the appellant's counsel. Because the appellant has satisfied the jurisdictional content requirements under 28 U.S.C. § 2412(d)(1)(B) within the applicable 30–day application period, his EAJA application was timely. *See Bazalo v. Brown,* 9 Vet.App. 304, 310 (1996) (en banc).

The Secretary argues that the appellant's request for fees should be denied because the position of the Department of Veterans Affairs (VA) was substantially justified or, if not, that there are special circumstances that would which make an attorney-fee award unjust. The Secretary also asserts that the number of hours expended by the appellant's counsel were unreasonably high, and that, citing *Elcyzyn v. Brown,* 7 Vet.App. 170, 179 (1994), the hourly rate sought should be reduced. The Secretary does not assert any other ground for contesting the EAJA application.

## II. Analysis

### A. Substantial Justification

■ Because the appellant has alleged that VA's position was not substantially justified, the burden to demonstrate substantial justification rests with the Secretary. *See Olney v. Brown,* 7 Vet.App. 160, 162 (1994); *Stillwell,* 6 Vet.App. at 301; *Cook v. Brown,* 6 Vet.App. 226, 237 (1994). The Court has adopted the following test for substantial justification:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Stillwell,* 6 Vet.App. at 302 (citing *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *Gavette v. OPM,* 808 F.2d 1456, 1467 (Fed.Cir.1986); and *Essex Electro Engineers, Inc. v. United States,* 757 F.2d 247, 252 (Fed.Cir.1985)).

■ In order to prevail, the Secretary must show substantial justification for both his administrative and litigation positions. *See ZP v. Brown,* 8 Vet.App. 303, 304 (1995) (per curiam order); *see also Marcus v. Shalala,* 17 F.3d 1033, 1036 (7th Cir.1994) (sustaining EAJA award "where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified"). The Court stated in *Stillwell:*

> Two special circumstances may also have a bearing upon the reasonableness of the litigation position of the VA, and of the action or inaction by the VA at the administrative level. One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court.

*Stillwell,* 6 Vet.App. at 303.

■ *1. VA administrative-level position.* As to VA's position in the administrative process, the Secretary argues that the November 22, 1994, BVA decision was reasonable in its decision in the instant case, notwithstanding its error in failing "to recognize that the [a]ppellant's lay statements as to the sequence of the events leading to his fall (i.e., while working on his job as a roofer, his service-connected left leg gave out (R. at 179)) may be sufficient to present a well-grounded claim for secondary service connection for any resultant injuries to his left arm and back, as provided under *Reiber, supra*". He contends that the *Reiber* decision represented a change of law and was issued after the Board's decision. Response at 8–9. Relying on *Grivois v. Brown,* 6 Vet.App. 136 (1994), and *Grottveit v. Brown,* 5 Vet.App. 91. 93 (1993), he argues that VA's practice prior to *Reiber* was to deny secondary-service-con-

nection claims as not well grounded when there was a lack of medical evidence supporting the claimed connection between the two disabilities.

In response, the appellant contends that *Reiber* reiterated an old rule, specifically, that a lay witness may provide sufficient support to render a secondary-service-connection claim well grounded. Supplemental (Suppl.) Application (Applic.) at 2. He asserts that this Court's opinion in *Layno v. Brown,* 6 Vet.App. 465 (1994), which was decided in June 1994, held that a lay witness can testify as to symptoms or facts he observed in support of his claim for service connection for asthma. He relies principally on *Harvey,* 6 Vet.App. at 393, in which he contends that the Court found that the "layperson's testimony regarding an incident or event alone—not in conjunction with medical evidence—rendered a claim of secondary service connection well[ ]grounded." Suppl. Applic. at 3, n. 1. He argues that his own lay statement that he observed his leg give way and that that caused him to fall provided sufficient evidence to well ground his claim for service connection for his back and arm condition as secondary to his service-connected left leg disability. He asserts that *Layno* and *Harvey* had established that medical evidence was not required to support his secondary-service-connection claim. Suppl. Applic. at 3–4.

The Court's caselaw indicates that where legal error has occurred, the Secretary will be substantially justified only where his interpretation of the law in question was reasonable. In *Dillon v. Brown,* the Court stated:

> To determine whether the Secretary has carried his burden of proof in demonstrating that his position was reasonable during the administrative proceedings, the Court looks to the "relevant, determinative circumstances." *Bowyer v. Brown,* 7 Vet. App. 549, 552 (1995); *Carpenito [v. Brown],* 7 Vet.App. [534,] 536 [ (1995) ].

Here, as in *Carpenito,* upon which the Secretary relies, the "relevant, determinative circumstances" are the state of the law concerning the Board's reliance on a Board medical adviser's opinion at the time of the Board's decision.

*Dillon,* 8 Vet.App. 165, 167–68 (1995). For the reasons that follow, the Court holds that the Secretary's position in the administrative phase was reasonable and thus substantially justified.

Under 38 C.F.R. § 3.310(a), secondary service connection is to be awarded when a disability "is proximately due to or the result of a service-connected disease or injury. . . ." A claim for secondary service connection must, as must all claims, be well grounded. 38 U.S.C. 5107(a); *see Jones (Wayne) v. Brown,* 7 Vet.App. 134, 136–38 (1994); *Proscelle v. Derwinski,* 2 Vet.App. 629, 633 (1992). In *Reiber,* the appellant was seeking service connection for a low back disorder resulting from a fall down stairs that he claimed had been precipitated by his service-connected left ankle's having given way. The evidence of record included pre-accident medical notes stating that his left ankle was unstable; that he had a severe left-foot drop; that gait analysis had showed that his left foot dragged on the ground and frequently folded under, causing him to trip; and that he had complained of his left ankle having pain and giving way and of his left foot dragging and causing him to trip over it. The medical notes also included his statement that his left ankle had given way, causing him to fall down stairs and injure his back; and a doctor's notation that the veteran's herniated disk was related to his fall down stairs.

The Court in *Reiber* concluded: "There are two steps in the appellant's argument for secondary service connection, and supporting evidence is required for each step. First, the appellant states that it was his left ankle which caused him to fall and, second, he claims that it was that fall which resulted in his current back condition." *Reiber,* 7 Vet. App. at 516. As to the first step, the Court noted that there was evidence in the record that his service-connected disability made his left ankle unstable and that the ankle occasionally gave way. As to the second, the Court held that "[w]hether the appellant's fall [and not some prior accident] may have caused his current back condition is a question of medical causation" and found that

there was a doctor's notation that all of the appellant's back problems had stemmed from his fall. *Ibid.* Accordingly, the Court held that the appellant had submitted "competent medical evidence, as required by *Grottveit,* making plausible his claim that the fall resulted in his current back disability." *Reiber,* 7 Vet.App. at 517.

The Court's decision in *Harvey,* which was issued prior to the November 1994 Board decision, did not govern the situation presented by the facts in the instant case. There, the appellant sought service connection for the cause of the veteran's death by filing a claim for dependency and indemnity compensation (DIC), and the issue before the Court was whether the DIC claim was well grounded. *Harvey,* 6 Vet.App. at 393. In determining whether a veteran's death is service connected, the service-connected disability must be either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a). The appellant's position was that the veteran's service-connected left-ankle and leg disabilities were the principal or a contributory cause of the veteran's fatal head injury. The appellant's lay statement related the sequence of events and attributed to the service-connected disability the cause of his fall that had resulted in the fatal head injury. The Court held that the appellant's statement as to the sequence of events "that resulted in a physically observable injury" rendered the claim well grounded. In *Harvey,* there was no medical evidence connecting the fall with the head injury, and the Court held that none was needed because the head injury was a "physically observable injury". *Harvey,* 6 Vet.App. at 393.

As discussed above, *Reiber* dealt with a claim for secondary service connection, the same type of claim involved in the instant case. The standard for awarding such a claim in both *Reiber* and this case is whether the secondary disability was "proximately due to or the result of a service-connected disease or injury". 38 C.F.R. § 3.310(a); *see Reiber,* 7 Vet.App. at 515; *Proscelle,* 2 Vet. App. at 633 (requiring medical evidence showing relationship between service-connected maxillary fracture and claimed secondary service connection for psychiatric disorder). This standard, although similar to the standard involved in *Harvey* in determining for DIC purposes whether a service-connected disability was either the principal or a contributory cause of death (38 C.F.R. § 3.312(a)), is not the same, and therefore *Harvey* was not controlling of the outcome in *Reiber* and did not compel the result there. *Cf. Erro v. Brown,* 8 Vet.App. 500 (1996) (panel decision applying reasoning in *Landicho v. Brown,* 7 Vet.App. 42 (1994), which had denied motion for substitution of accrued-benefits claimant (under 38 U.S.C. § 5121) as part of appeal relating to disability-compensation claim under chapter 11 of title 38, to situation where DIC claimant sought to be substituted as party in widow's appeal of her pending DIC claim); *Edmonds v. Brown,* 9 Vet.App. 159 (1996) (panel per curiam order applying reasoning in *Landicho* to situation where accrued-benefits claimant sought substitution in pending appeal of DIC claimant). Indeed, *Reiber* did not even cite *Harvey.* *Reiber* decided an issue of first impression by holding that lay evidence of a fall being due to a leg (or part thereof) weakened by a service-connected disability was enough to well ground a claim for secondary service connection for a back condition without any medical evidence on that point, as long as there was medical evidence connecting a currently diagnosed back disability to the fall. Similarly, in *Layno* the claim on appeal was not one for secondary service connection and did not invoke 38 C.F.R. § 3.310(a), but was for direct service connection. Moreover, the Court there found the claim not well grounded, concluding that although there was lay testimony there was no evidence showing a relationship between his current condition and his military service and there was no evidence that he had incurred the condition during service. *Layno,* 6 Vet.App. at 471.

Hence, the Board's failure in the instant case to rely on *Harvey* or *Layno* with respect to a claim for secondary service connection was reasonable. Although the parties' joint motion for remand in this case cited *Harvey,* the remand focused primarily on *Reiber.* It specifically stated that on readjudication the Board should apply the two-step analysis used by the Court in *Reiber.* Re-

viewing the "totality of the circumstances", the Court concludes that the catalyst for the remand was the change in the law brought about by *Reiber.* Thus, the Board acted consistently with judicial precedent, and the Secretary was substantially justified in the administrative phase of this case. *See Olney,* 7 Vet.App. at 162.

**2. VA litigation position.** Having concluded that the Secretary was substantially justified in his administrative position, the Court must also determine whether the government's litigation position before this Court was substantially justified. *See* 28 U.S.C. § 2412(d)(1)(B), (2)(D); *ZP,* 8 Vet. App. at 304; *Stillwell,* 6 Vet.App. at 302; *see also Marcus, supra.* "To determine whether the Secretary has demonstrated that his position was 'reasonable' during the litigation proceedings, the Court looks to the circumstances surrounding the resolution of the dispute." *Dillon,* 8 Vet.App. at 166.

The parties' October 4, 1995, joint motion for remand came within six months after *Reiber* was decided and within two months after the appellant filed his August 14, 1995, brief and prior to the Secretary's filing his brief. *See Dillon,* 8 Vet.App. at 168 (Secretary's litigation position reasonable where joint motion filed three months after appellant filed brief and Secretary had not yet filed brief); *Olney,* 7 Vet.App. at 162 (VA's litigation position substantially justified where joint motion to remand filed little more than two months after Court opinion changing law and was catalyst for remand). Reviewing the itemized statement of fees incurred, it is apparent that the negotiation of the joint motion began prior to or on September 26, 1995 (Declaration of Valerie L. Hughes at 3), and that the Secretary had "requested that [the appellant] join in a motion to remand the case to the Board" (Suppl. Applic. at 1), thereby implying that the Secretary had initiated the remand. *See Stillwell,* 6 Vet.App. at 304 (citing fact that VA had "initiated negotiations with appellant to remand the matter here immediately following the issuance of [the controlling opinion]" as factor supporting finding of substantial justification); *see also Essex Electro Engineers,* 757 F.2d at 253 (Federal Circuit speci-

fied that, when deciding whether government was substantially justified in particular case, one factor court should consider is whether government "drag[ged] its feet ... [or whether it] cooperated in speedily resolving the litigation"). Accordingly, the Court concludes that the Secretary did not "drag his feet" during the litigation portion of the appeal and thus his position was substantially justified. *See Olney,* 7 Vet.App. at 162–63 (citing *Essex Electro,* 757 F.2d at 253); *Stillwell, supra.*

### B. Special Circumstances

Because the Court holds that the Secretary was substantially justified in both his administrative and litigation positions, the issue whether special circumstances exist need not be decided; however, the Court notes that, under *Doria v. Brown,* the Secretary has not presented a situation for application of this special-circumstances exception because he presents no argument that equitable circumstances or a novel legal issue were involved here. *Doria,* 8 Vet.App. 157, 162–63 (1995). In *Doria,* this Court concluded that, although "special circumstances" were not defined in the EAJA, the legislative history "recognized two distinct categories of special circumstances: First, situations where the government proffered novel but credible extensions and interpretations of the law; and second, situations 'where equitable considerations dictate an award should not be made' "; and that "equitable considerations" meant "a prevailing party's unclean hands." *Doria,* 8 Vet.App. at 162 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4990); *see Brinker v. Guiffrida,* 798 F.2d 661, 667 (3d Cir.1986); *Oguachuba v. INS,* 706 F.2d 93, 98–99 (2d Cir.1983) (finding EAJA special circumstances and denying award where appellant was "without clean hands" because of "notorious and repeated violations of United States immigration law"). The Secretary here does not assert that the appellant has unclean hands—indeed, the Secretary does not claim that the appellant has done anything inequitable. The Secretary argues, instead, that VA benefits law was "clearly evolving on the issues of well-groundedness and the sufficiency of evidence

to support a claim of entitlement to service connection". This argument is merely a reiteration of the Secretary's successful position on substantial justification, discussed in part II.A.1., above.

### III. Conclusion

The Court holds that the government's position was substantially justified in the administrative phase because the Secretary reasonably applied the Court's precedential caselaw as of that time, and in the litigation phase because VA initiated a joint remand pursuant to the Court's decision in *Reiber* soon after the appellant's brief was filed. The appellant's application for EAJA fees and expenses is thus denied.

APPLICATION DENIED.