Citation Nr: 1513877 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 07-06 608A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUE

Entitlement to service connection for status-post rotator cuff and impingement syndrome (claimed as a right shoulder disability), to include as secondary to service-connected anterior cruciate ligament (ACL) tear of the left knee (left knee disability).


REPRESENTATION

Appellant represented by: Attorney Robert V. Chisholm


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

W.L. Puchnick, Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty in the U.S. Air Force from November 1980 to November 1984. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 Rating Decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Sioux Falls, South Dakota, which denied the Veteran's claim for service connection for status-post rotator cuff and impingement syndrome (claimed as a right shoulder disability), to include as secondary to a service-connected ACL tear of the left knee. 

In a February 2012 decision, the Board determined that a claim for entitlement to a total disability evaluation on the basis of individual unemployability due to service-connected disabilities (TDIU) had been raised, and remanded the claim for a VA examination. An October 2013 Board decision denied both service connection for a right shoulder disorder, as secondary to a left knee disability, as well as a TDIU. The Veteran appealed the denial of both claims to the United States Court of Appeals for Veterans Claims (Court). 

In a July 2014 Memorandum Decision, the Court affirmed the Board's denial of the Veteran's claim for a TDIU and vacated the Board's denial of his claim for service connection for a right shoulder disorder as secondary to a left knee disability. In remanding the claim to the Board, the Court found that the most recent VA examination of the Veteran's shoulder (in April 2013) was "inadequate for rating purposes and the Board erred in relying upon it." (Memorandum Decision, Page 6). 

In March 2010, the Veteran testified at an RO hearing before a Hearing Officer. A transcript of said hearing has been associated with the record. The Board has reviewed the Veteran's paper claims file as well as the Veterans Benefit Management System (VBMS) and the "Virtual VA" files. 


FINDINGS OF FACT

1. Service connection is in effect for an ACL tear of the left knee. 

2. The Veteran was issued a single-point cane in May 2003 as a result of left-knee instability. 

3. In May 2009 the Veteran underwent a right rotator cuff repair resulting from a fall. 

4. In July 2011 the Veteran fell while at home, landing on his right shoulder; he stated he used a cane due to a previous injury and was unable to use the cane in his right hand.

5. The Veteran was diagnosed with degenerative joint disease (DJD) of the right shoulder/probable rotator cuff injury in July 2011. 

6. A January 2015 private orthopedic surgeon's opinion concluded that the Veteran's service-connected left knee disability led to long-term use of a single point cane, and that the cane caused the Veteran's fall in 2009 which required repair of his right rotator cuff. 


CONCLUSION OF LAW

Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for a right shoulder disability have been met. 38 U.S.C.A. §§ 1131, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5100, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2014). While the Veteran's appeal has been considered with respect to VA's duties to notify and assist, given that the favorable outcome in this decision represents a full grant of the benefit sought on appeal, further explanation of how VA has fulfilled the duties to notify and assist is unnecessary. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993). 

II. Applicable Law

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Establishing service connection generally requires: (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be granted for a disability that is proximately due to, or the result of, a service-connected disability. See 38 C.F.R. § 3.310(a). When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. See id; Harder v. Brown, 5 Vet. App. 183, 187 (1993). The controlling regulation has been interpreted to permit a grant of service connection not only for disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a non-service-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). In other words, service connection may be granted for a disability found to be proximately due to, or the result of, a service-connected disease or injury. To prevail on the issue of secondary service causation, the record must show: (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between the current disability and the service-connected disability. Wallin v. West, 11 Vet. App. 509, 512 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995).

In this case, degenerative joint disease (DJD), considered as "arthritis," is a "chronic disease" listed under 38 C.F.R. § 3.309(a). Therefore, the presumptive provisions of 38 C.F.R. § 3.303(b) for the right shoulder disability apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). However, as the Board is granting service connection below for a right shoulder disability as secondary to the Veteran's service-connected left knee disability, the additional theory of presumptive service connection is rendered moot (because there remain no questions of law or fact as to the fully-granted issue). See 38 U.S.C.A. § 7104 (West 2014) (stating that the Board decides questions of law or fact). 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA examiner or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the Veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005). 

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428, 434-35 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. at 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d at 1377. 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

The Veteran contends that he is entitled to service connection for a right shoulder disability secondary to his service-connected left knee disability because the use of a single-point cane prescribed for left knee instability led to his falling and injuring his right shoulder, requiring surgery. 

The Board has a duty to consider all theories of entitlement to the benefit sought. See Szemraj v. Principi, 357 F.3d 1370, 1371 (Fed. Cir. 2004) (when determining service connection, all theories of entitlement, direct and secondary, must be considered); see also Schroeder v. West, 212 F.3d 1265 (Fed. Cir. 2000) (holding that a claim for disability compensation should be broadly construed to encompass all possible theories of entitlement). Thus, the Board must consider both direct and secondary theories of entitlement with respect to the Veteran's claim of service connection. However, as the Board is granting service connection based on secondary service connection (adjudicated below), additional service-connection theories will not be further discussed. See 38 U.S.C.A. § 7104. 

Pertinent evidence of record includes a May 2003 VA physical therapy note stating that the Veteran was issued a single-point cane because "his [left] knee just gives out at times and he needs something for stability." 

July 2008 VA X-ray examination of the Veteran's right shoulder assessed degenerative arthritis of the right acromioclavicular (AC) joint. 

A private provider magnetic resonance imaging (MRI) report from Sanford USD Medical Center performed in February 2009 showed moderate-to-severe hypertrophic degenerative changes in the right AC joint. 

During VA clinical evaluation in May 2009, the Veteran complained of a right torn rotator cuff, and stated that he had experienced difficulty raising his right arm above 90 degrees for approximately one year, after sustaining a fall. He was assessed with a right torn rotator cuff. The next day, VA performed a right shoulder acromioplasty and AC joint resection. 

In his VA Form 9 Substantive Appeal received in January 2010, the Veteran stated that using the prescribed cane caused his right shoulder to become tender. 

During his March 2010 RO hearing, the Veteran testified that he was issued a cane by VA due to his left knee disability, and that he used the cane with his right hand. He stated that, a few years later (2006 or 2007), his left knee gave out, causing him to lose his balance and fall, and eventually causing decreased motion in his right shoulder. 

The Veteran attended a VA joints examination in October 2010. He reported that he started to use a cane 5 to 6 years previously which was issued by VA for his left knee, and that he had fallen a few times because of the knee, injuring his right shoulder. The impression was status-post right acromioplasty for AC joint osteoarthritis. The examiner opined that he contacted the VA physician who performed the May 2009 surgery, and the surgeon opined that "it would be less likely as not that the right shoulder AC joint would be related to the cane use and more likely to the aging process." The October 2010 examiner's opinion was that the Veteran's right shoulder condition was less likely than not a result of his cane use. 

A July 2011 VA nursing outpatient note stated that the Veteran fell at home and heard a "pop" upon landing on his right shoulder. The note also indicated that the Veteran used a cane due to a previous injury and was unable to use the cane in his right hand at the present time. A July 2011 VA primary care note of the same date indicates that two days beforehand the Veteran fell on his outstretched right arm, that he could not pick up or lift anything, and that he experienced pain from the right shoulder down. The impression was DJD of the right shoulder/probable rotator cuff injury. 

The Veteran was afforded a VA examination of the arm and shoulder in April 2013. The examiner listed a diagnosis of DJD of the left shoulder AC joint. X-ray examination of the right shoulder was normal. The examiner concluded that there was "no medical evidence in the literature to support a knee problem (weight bearing joint) is linked to a shoulder problem (a NON-weight bearing joint)." The examiner added that the April 2013 X-ray impression of DJD of the left shoulder AC joint suggested old, chronic changes most likely from the "normal 'aging' process." 

A May 2013 VA orthopedic surgery outpatient note recorded that the Veteran experienced pain and instability of his left knee since his prior surgery, and also that he occasionally fell when the knee gave out. During VA physical medicine evaluation in August 2013, the Veteran reported falling on the stairs 2 weeks previously when his left knee gave out. Left knee pain and quadriceps weakness were diagnosed. A VA primary care note dated in November 2013 indicated that the Veteran's left knee pain caused him to fall. 

The Veteran's most recent examination was by private physician Donald B. Miller, Jr., conducted in January 2015 (subsequent to the Court's July 2014 vacatur and remand of the October 2013 Board decision). Dr. Miller set forth a detailed, chronological history of the pertinent evidence with respect to the Veteran's claim. The physician opined that "it is at least as likely as not that the veteran's service-connected left knee instability/pain that led to the long-term use of the cane in his right hand, is the direct cause of the veteran's fall in either late 2008 or early 2009 that in turn led directly to the subsequent surgery on his right shoulder in 2009." 

As stated above, to prevail on the issue of secondary service causation, the record must show competent evidence of: (1) a current disability; (2) a service-connected disability; and (3) a connection between the current disability and the service-connected disability. Wallin, 11 Vet. App. at 512; Reiber, 7 Vet. App. at 16-17. 

After a review of all the evidence, the Board finds that the Veteran meets the first requirement (that of a current disability) because he was diagnosed in July 2011 with DJD of the right shoulder/probable rotator cuff injury. See 38 C.F.R. § 3.310; Allen, 7 Vet. App. at 448. And, as noted above, service connection is in effect for an ACL tear of the left knee. Moreover, the Veteran has provided competent testimony during his March 2010 RO hearing that he fell in 2006 or 2007, which eventually led to a right-shoulder disability. The Veteran is competent to testify as to his falling. See Layno, 6 Vet. App. at 469-70. Additionally, the Board finds the Veteran's testimony credible, as it has been consistent in his reports to medical providers (he also reported falling due to his left knee giving out in May 2013, August 2013, and November 2013). See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (2006) (noting that the Board must determine whether lay evidence is credible due to possible bias, conflicting statements, and the lack of contemporaneous medical evidence, although that alone may not bar a claim for service connection). The Board thus accords the testimony significant probative value and weight. See Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994) (noting that the Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence, and provide the reasons for its rejection of any such evidence). 

The Board further finds that, resolving reasonable doubt in the Veteran's favor, his current right shoulder disability was proximately caused by his service-connected left knee disability. The Board assigns great probative weight to the January 2015 opinion from Dr. Miller. Notably (unlike the October 2010 and April 2013 VA examiners' opinions) Dr. Miller specifically addressed the Veteran's contention that he injured his right shoulder because of falling due to his service-connected left knee (see April 2013 Deferred Rating Decision, stating "veteran has also contended he has injured his right shoulder after falls due to his left knee."). The 2015 opinion provides favorable support that the Veteran's right shoulder disability was proximately caused by his service-connected left knee disability. For these reasons, resolving all reasonable doubt in the Veteran's favor, the Board finds that the criteria for service connection for a right shoulder disability, as secondary to the service-connected left knee disability have been met. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 


ORDER

Service connection for a right shoulder disability, as secondary to the service-connected left knee disability, is granted. 



____________________________________________
K.J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs