Citation Nr: 1550120 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 10-25 555 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for Addison's disease, to include adrenal hypofunction as due to panhypopituitarism.

2. Entitlement to service connection for a thyroid disorder, to include hypothyroidism, to include as due to Addison's disease or panhypopituitarism.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

E. Blowers, Associate Counsel



INTRODUCTION

The Veteran, who is the appellant, had active service from September 1961 to September 1964, and from September 1964 to August 1966.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision of the RO in Nashville, Tennessee, which denied service connection for Addison's disease and declined to reopen service connection for hypothyroidism.

This case was first before the Board in January 2014, where the thyroid disability issue was reopened and the issues on appeal were remanded for a VA endocrine examination. The Veteran received VA endocrine disease and thyroid examinations in March 2014. Subsequently, in December 2014, the Board again remanded the issues on appeal for an addendum opinion. The requested addendum opinion was issued in January 2015. The examination reports and addendum opinion are of record. The VA examination reports and addendum opinion reflect that the VA examiners reviewed the record, took a history from the Veteran, conducted an in-person examination with appropriate testing, and rendered the requested opinions. As such, an additional remand to comply with the January 2014 and December 2014 directives is not required. Stegall v. West, 11 Vet. App. 268 (1998).

Since the issuance of the last supplemental statement of the case (SSOC), additional evidence has been received by the Board for which a waiver of initial RO consideration was provided. 38 C.F.R. § 20.1304 (2015). The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence. 


FINDINGS OF FACT

1. The Veteran is currently diagnosed with Addison's disease and hypothyroidism.

2. The currently diagnosed Addison's disease and hypothyroidism are caused by diagnosed panhypopituitarism.

3. The panhypopituitarism is not related to an in-service injury or disease, including the in-service dysuria, gonococcal urethritis, strep throat, or ear infections.


CONCLUSIONS OF LAW

1. The criteria for service connection for Addison's disease, to include adrenal hypofunction as due to panhypopituitarism, have not been met. 38 U.S.C.A. 
§§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.326(a) (2015).

2. The criteria for service connection for a thyroid disorder, to include hypothyroidism, to include as due to Addison's disease or panhypopituitarism, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 
38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310, 3.326(a) (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and to Assist

The VCAA and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. 

In November 2009, VA issued the Veteran VCAA notice which informed of the evidence generally needed to support a claim for service connection, what actions needed to be undertaken, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the rating decision from which this appeal arises. Further, the issues were readjudicated in a May 2010 Statement of the Case (SOC), and April 2014 and February 2015 SSOCs; therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Regarding the duty to assist in this case, the Veteran received VA endocrine disease and thyroid examinations in March 2014, and a corresponding addendum opinion was issued in January 2015. The examination reports and addendum opinion are of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The examination reports and addendum opinion reflect that the record was reviewed, necessary testing was conducted, and all relevant questions were answered.

All relevant documentation has been secured, including VA treatment (medical) records, and all relevant facts have been developed. There remains no question as to the substantial completeness of the issues on appeal. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above. 

Service Connection for Adrenal and Thyroid Disabilities

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

In this case, Addison's disease, hypothyroidism, and panhypopituitarism are not "chronic diseases" listed under 38 C.F.R. § 3.309(a) (2015); therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303(b) do not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may be granted for disability that is proximately due to or the result of a service-connected disability. Service connection may also be granted for the degree of disability resulting from aggravation of a nonservice-connected disability by a service-connected disability. See 38 C.F.R. § 3.310 (2015); Allen v. Brown, 7 Vet. App. 439, 448 (1995).

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1154(a) (West 2015); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The Federal Circuit has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; 
(2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).

The Veteran has advanced that currently diagnosed adrenal and thyroid disabilities are related to various diseases for which the Veteran was treated in service, including dysuria, gonococcal urethritis, strep throat, and/or ear infections. At the outset, the Board finds that the Veteran is currently diagnosed with the adrenal disability of Addison's disease, and the thyroid disability of hypothyroidism. A VA examiner diagnosed the Veteran with these disabilities at March 2014 VA endocrine disease and thyroid examinations.

The reports from the March 2014 VA examinations reflect that the Veteran first advanced being diagnosed with Addison's disease in 1991. A July 1991 VA treatment record indicates that the Veteran was likely first diagnosed with Addison's disease on or about June 1991. Further, the Veteran advanced being diagnosed with hypothyroidism one to two years after the Addison's disease diagnosis. While the available VA treatment records are unclear as to the exact date on which the Veteran was diagnosed with a thyroid disability, the evidence does reflect that hypothyroidism was not diagnosed until after the Addison's disease was diagnosed.

The Board notes that VA treatment records include "adrenal hypofunction" under the problem list but do not specifically include Addison's disease. A review of all the evidence of record reflects that the adrenal hypofunction and Addison's disease are effectively one and the same. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 528 (32nd ed. 2012) (Addison's disease is a chronic type of adrenocortical insufficiency, characterized by hypotension).

At the conclusion of the examinations, the VA examiner opined that it was less likely as not that either the Addison's disease or the hypothyroidism has their onset during active service. Specifically, the VA examiner noted that service treatment records were silent for any symptoms of Addison's disease or hypothyroidism in service, and the Veteran was not diagnosed with either until at least 1991, approximately 25 years after service. The VA examiner went on to note that the Veteran had been diagnosed with panhypopituitarism, which was, in fact, the cause of both the Addison's disease and the hypothyroidism.

After the issuance of the March 2014 VA examination reports, in an October 2014 brief, the Veteran's representative argued that the opinion was inadequate because it failed to address whether the panhypopituitarism was related to the Veteran's in-service complaint and treatment of a variety of diseases, including dysuria, gonococcal urethritis, strep throat, or ear infections. The Board agreed, and the matter was remanded for an addendum opinion in December 2014.

An addendum opinion was issued in January 2015. After considering all the evidence of record, the VA examiner opined that it was less likely than not the panhypopituitarism was related to an injury or disease in service, including the in-service dysuria, gonococcal urethritis, strep throat, or ear infections.

In support of the opinion, the VA examiner in January 2015 relied on an article from the publication "Up To Date" entitled "Causes of Hypopituitarism." The medical article was last updated in March 2014, less than a year prior to the rendered opinion. The article explained that the potential causes of hypopituitarism, from most to least common, were as follows: 1) pituitary tumors, 2) extrapituitary tumors, 3) unknown etiology, 4) sarcoidosis, and 5) Sheehan syndrome. 

The VA examiner in January 2015 went on to explain that "endocrinology notes from the 1990s seen in VBMS do not report any specific cause for the Veteran's diagnosed panhypopituitarism; however, these notes clearly report that the Veteran's panhypopituitarism was first diagnosed and treated in 1991 with NO reference to any former symptoms of diagnosis/treatment of panhypopituitarism prior to 1991. Additionally, service treatment records are silent for any reported symptoms of panhypopituitarism during the Veteran's service. Therefore, in this case, based on the available medical records and history, the etiology of the Veteran's panhypopituitarism would fall into the unknown etiology [cause] as noted above."

In opining that the panhypopituitarism was not related to service, including the in-service dysuria, gonococcal urethritis, strep throat, or ear infections, the VA examiner in January 2015 initially noted that dysuria, gonococcal urethritis, strep throat, and ear infections are not listed among the known causes of panhypopituitarism. In considering whether these in-service diseases (or any other in service event, injury, or disease) may be responsible for the "unknown etiology" of the panhypopituitarism, the VA examiner noted that service treatment records were silent for any reported symptoms of panhypopituitarism in service, the Veteran's April 1966 separation examination was normal, and any infections for which the Veteran was treated in service were acute and resolved with no residual health issues or concerns at the time of service separation. 

Further, the VA examiner in January 2015 explained that VA treatment records reflected that the Veteran was first diagnosed with Addison's disease in 1991, which was supported by the Veteran's own statements. Specifically, at the March 2014 VA examinations, the Veteran told the VA examiner that in 1991 the Veteran felt very sick with flu-like symptoms and reported to the hospital. At that time blood pressure readings were low and potassium was high, and the Veteran was diagnosed with Addison's disease. The VA examiner opined that such a history was consistent with an onset of panhypopituitarism-related disabilities in 1991.

Additionally, the VA examiner in January 2015 discussed how in a November 1996 VA endocrinology note the Veteran complained of "nervousness deep inner all the time for five years." The VA examiner noted that this statement was consistent with a 1991 onset of panhypopituitarism and its related disabilities. For these reasons, the VA examiner concluded that there was no evidence of record suggesting that the Veterans "Addison's disease, hypogonadism, hypothyroidism, or/and any other indicator of panhypopituitarism began prior to 1991."

While the Veteran has expressed concern that the panhypopituitarism-related disability symptoms were caused by an injury, disease, or event in service, to include the treated dysuria, gonococcal urethritis, strep throat, and ear infections, the Board does not find that under the facts of this case, where there is no symptomatology and no credible symptoms or treatment until many years after service, the Veteran is competent to provide evidence of an etiological nexus between panhypopituitarism-related disability symptoms and in-service treatment. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (recognizing that orthopedic ACL tear is too medically complex for lay evidence to competent to diagnose); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis). The etiology of the Veteran's panhypopituitarism-related disabilities in this case involve complex medical etiological questions dealing with the origin and progression of the endocrine system, and such disabilities are diagnosed primarily on clinical findings and physiological testing. While the Veteran is competent to relate symptoms at any time, he is not competent in this case to opine on whether there is a link between a panhypopituitarism-related disability and active service because such a medical opinion requires specific medical knowledge and training that the Veteran has not been shown to possess. 

Further, the Board notes that in an October 2014 brief the Veteran's representative advanced that a June 2009 article from the National Institutes of Health "indicated a relationship between dysuria and Addison's disease." It does not appear that this article was received by VA; however, the Board notes that the advanced article is significantly older than the March 2014 medical article relied upon by the VA examiner in January 2015. Further, the VA examiner assessed that the Veteran's dysuria resolved prior to service separation in August 1966, and that the Veteran's currently diagnosed panhypopituitarism-related disabilities did not appear until approximately 25 years after service separation. As such, assuming that the June 2009 article cited to by the representative does indicate some relationship between dysuria and Addison's disease, for the aforementioned reasons, the Board finds 

such evidence to be of significantly less probative value than the case-specific January 2015 VA addendum opinion that is supported my medical authority and rationale.

After a review of all the evidence of record, lay and medical, the Board finds that the evidence weighs against a finding that the currently diagnosed Addison's disease and hypothyroidism are related to service. The record reflects that no VA or private physician has related any such disability to service. In March 2014, a VA examiner opined that the diseases were caused by panhypopituitarism. Subsequently, in January 2015, a VA examiner opined that the panhypopituitarism and associated disabilities were not related to an injury, disease, or event in service, to include dysuria, gonococcal urethritis, strep throat, or ear infections. This opinion was supported by medical journal evidence that dysuria, gonococcal urethritis, strep throat, and ear infections are not known causes of panhypopituitarism, the Veteran's own statements for treatment which support a finding that panhypopituitarism and its related disabilities did not begin until on or after 1991, and service treatment records reflecting both that there were no symptoms of panhypopituitarism and its related disabilities in service, and that any infections for which the Veteran was treated in service were acute and resolved with no residual health issues or concerns at the time of service separation. 

For these reasons, the preponderance of the evidence is against a finding that the currently diagnosed panhypopituitarism and its related disabilities of Addison's disease and hypothyroidism are related to service, and the issues on appeal must be denied. As the preponderance of the evidence is against service connection, benefit of the doubt doctrine does not apply, and the claim must be denied. 38 U.S.C.A. 
§ 5107(b); 38 C.F.R. § 3.102.

The Board notes that the Veteran has advanced that hypothyroidism may be secondary to the diagnosed Addison's disease. In the instant decision, the Board denied service connection for Addison's disease. As such, secondary service 

connection is not warranted whether or not the hypothyroidism was caused or aggravated by the currently diagnosed Addison's disease and must be denied because there is no primary disability upon which secondary service connection may be granted. See 38 C.F.R. § 3.310(a); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995). 


ORDER

Service connection for Addison's disease, to include adrenal hypofunction as due to panhypopituitarism, is denied.

Service connection for a thyroid disorder, to include hypothyroidism, to include as due to Addison's disease or panhypopituitarism, is denied.



____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs