﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/19 Archive Date: 02/26/19

DOCKET NO. 181024-690
DATE: February 26, 2019

ORDER

Entitlement to service connection for Parkinson’s disease is granted.

Entitlement to service connection for erectile dysfunction (claimed as penile condition) is granted.

Entitlement to service connection for a depressive disorder as secondary to service-connected posttraumatic stress disorder (PTSD) is granted.

Entitlement to service connection for anxiety is denied.

Entitlement to service connection for sleep disturbances (diagnosed as REM Sleep Behavior Disorder and insomnia) is granted.

Entitlement to service connection for loss of smell is denied.

Entitlement to service connection for an eating disorder is denied.

Entitlement to an initial evaluation of 70 percent disabling, but no higher, for service-connected posttraumatic stress disorder (PTSD) is granted.

Entitlement to a total disability rating based on individual unemployability (TDIU) is granted.

REMANDED

Entitlement to service connection for gastritis with esophagitis is remanded.

FINDINGS OF FACT

1. The Veteran has Parkinson’s disease which is related to his active service, particularly including exposure to toxins during his service.

2. The Veteran has erectile dysfunction that is related to his Parkinson’s disease.

3. The Veteran has major depressive disorder which was caused by his service-connected PTSD.

4. The Veteran does not have, and has not had during the appeal period, a current and separate disability consisting of anxiety. Rather, his anxiety is a symptom of his psychiatric disabilities and his Parkinson’s disease.

5. The Veteran has REM Sleep Behavior Disorder and insomnia, which are as likely as not associated with his Parkinson’s disease.

6. The Veteran does not have, and has not had during the appeal period, a current disability consisting of loss of smell.

7. The Veteran does not have, and has not had during the appeal period, a disability consisting of an eating disorder.

8. The Veteran’s PTSD was manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment thinking and mood due to symptoms such as frequent intrusive memories, physiological reactivity, detachment, restricted range of affect, increased arousal, hypervigilance, a history of startle response, nightmares/hallucinations, disturbances of motivation and mood, and loss of interest.

9. The Veteran’s service-connected disabilities render him unable to obtain or maintain gainful employment.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for Parkinson’s disease have been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

2. The criteria for entitlement to service connection for erectile dysfunction (claimed as penile condition) have been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

3. The criteria for entitlement to service connection for a depressive disorder have been met as secondary to service-connected PTSD. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

4. The criteria for entitlement to service connection for anxiety have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2017).

5. The criteria for entitlement to service connection for loss of smell have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

6. The criteria for entitlement to service connection for a sleep disorder (diagnosed as REM Sleep Behavior Disorder and insomnia) have been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

7. The criteria for entitlement to service connection for an eating disorder have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).

8. The criteria for entitlement to an initial evaluation of 70 percent disabling, but no higher, for service-connected PTSD have been met. 38 U.S.C. § 1155 (West 2014); 38 C.F.R. §§ 4.1, 4.7, 4.130, Diagnostic Code 9411 (2017).

9. The criteria for entitlement to a TDIU have been met. 38 U.S.C. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16, 4.18, 4.25 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1979 to October 1999.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran opted into the RAMP program on May 9, 2018. As explained on the RAMP Opt-In Election Form, the RO’s higher level review and the Board’s review is based on evidence submitted to VA as of the date of the election. Therefore, the Board has considered all evidence of record up to May 9, 2018, including, importantly, the January 2018 Opinion of Dr. Cassano and the December 2017 Opinion of Dr. Levy. The Board has not considered any evidence, if any, received or submitted after the May 2018 RAMP Opt-In Election. The Board has, however, considered the arguments submitted by the Veteran’s representatives after May 2018.

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110 and 1131; 38 C.F.R. § 3.303. To prevail on the issue of service connection, there must be competent evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

Further, where the veteran asserts entitlement to service connection for a chronic disease but there is insufficient evidence of a diagnosis in service, service connection may be established under 38 C.F.R. § 3.303(b) by demonstrating a continuity of symptomatology since service, but only if the chronic disease is listed under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338-39 (Fed. Cir. 2013). None of the conditions claimed by the Veteran are included in the list of chronic diseases under 38 C.F.R. § 3.309(a). Therefore, the provisions relating to continuity of symptomatology do not apply to the claims denied on the merits in this decision.

For disabilities that are not listed as chronic, under 38 C.F.R. § 3.309(a), the only avenue for service connection is by showing in-service incurrence or aggravation under 38 C.F.R. § 3.303(a), or by showing that a disease that was first diagnosed after service is related to service under 38 C.F.R. § 3.303(d). See Walker, 708 F.3d at 1338-39. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2017).

In the context of claims for secondary service connection, the evidence must demonstrate an etiological relationship between the service-connected disability or disabilities on the one hand and the condition said to be proximately due to the service-connected disability or disabilities on the other. Buckley v. West, 12 Vet. App. 76, 84 (1998). Secondary service connection may also be warranted for a nonservice-connected disability when that disability is aggravated by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). Also, with regard to a claim for secondary service connection, the record must contain competent evidence that the secondary disability was caused or aggravated by the service-connected disability. See Wallin v. West, 11 Vet. App. 509 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995).

1. Entitlement to service connection for Parkinson’s disease

The Veteran claims entitlement to service connection for Parkinson’s disease including as due to exposure to toxins during his active service. See, e.g., December 2018 Statement of Veteran’s Position at p. 7 (“The second element of proof [with respect to his Parkinson’s disease claim] is exposure to toxic chemicals in service.”).

The record establishes a current disability consisting of Parkinson’s disease. See, e.g., September 2014 VA 21-0960 (diagnosing and evaluating the Veteran’s Parkinson’s disease); April 2014 SSA Disability and Determination Transmittal (noting primary diagnosis of Parkinson’s disease renders the Veteran unemployable and attaching medical records establishing the diagnosis and symptomatology).

The in-service element of the Veteran’s claim is met. His service records establish possible exposure to nerve agents during his service in the Persian Gulf and also exposure to other toxins (including paint fumes, organic solvents, fuel, and metal shavings). A medical professional has opined that these substances are toxic and capable of producing the claimed condition. See January 2018 Opinion of Dr. Cassano (also discussing the documented diagnosis of neutropenia during service as indicating high exposure to organic solvents, particularly benzene).

The final element of the Veteran’s claim is a causal nexus between the in-service exposures and his current disability. The private opinion letter submitted by the Veteran is the only evidence on this issue. The RO did not obtain an opinion on this element as it determined that the exposures noted above were insufficient to satisfy the in-service element and, thereby, trigger the duty to assist.

Based on Dr. Cassano’s opinion, as already noted, the Board finds that the in-service element of the claim has been met. In addition, the letter is detailed and persuasive with respect to the nexus element of the claim. See January 2018 Opinion of Dr. Cassano. 

The author of the opinion letter is a former Navy medical captain with over twenty (20) years of experience in the Navy and is a nationally recognized expert on diseases caused by toxic exposures to military personnel. Among other prominent and relevant positions, she served as the Senior Medical Advisor to the Office of Disability and Medical Assessment at the Department of Veterans Affairs and has advised on developing policy and rulemaking at VA on a number of areas related to toxic exposures. 

Dr. Cassano provides an accurate and detailed military and medical history for the Veteran. She notes, in particular, the absence of several potential risk factors and negative family history of neurodegenerative disorders. She noted the Veteran’s history of neutropenia during his active service. The private physician provided a detailed discussion of the medical literature that discusses the effect of organic solvents and other chemicals on neurobehavior and the association between Parkinson’s disease and exposure to various toxins. Based on review of the Veteran’s service records (including his MOS and specific duties) and her specialized knowledge, the private physician opined that the Veteran had exposure to organic solvents (particularly toluene) that was “orders of magnitude greater than what one would have encountered at Camp Lejeune over the same period of time.” Notably, the private physician was involved in developing policy related to the presumptions of service connection for veterans exposed to drinking water at Camp Lejeune, which indicates familiarity with the effects of the chemicals, the levels of exposure that are capable of producing neurodegenerative disorders, and the medical indicators that a particular condition was or may have been caused by such exposures. She opined that the Veteran’s Parkinson’s disease “is more than at least as likely as not caused by his exposure to organic solvents for over 20 years of honorable service.” The Board finds the opinion persuasive. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (“most of the probative value of a medical opinion comes from its reasoning”).

There are no contrary opinions of record. Therefore, the evidence is at least in equipoise regarding whether the Veteran’s Parkinson’s disease is associated with exposure to toxins during his active service. 

Service connection for Parkinson’s disease is granted.

2. Entitlement to service connection for erectile dysfunction (claimed as penile condition)

The Veteran claims entitlement to service connection for erectile dysfunction including as due to service-connected conditions. The evidence establishes that the Veteran has a current disability. Moreover, VA has previously found that the Veteran’s Parkinson’s disease and medications therefore cause the Veteran’s erectile dysfunction. See January 2018 Statement of the Case; see also August 2016 VA Examination (opining that the Veteran’s erectile dysfunction is more likely than not related to his Parkinson’s disease and medications therefore rather than his PTSD). The Board adopts this prior favorable finding of a causal nexus between the erectile dysfunction and the now service-connected Parkinson’s disease. The elements of a claim of entitlement to service connection for erectile dysfunction have been established.

The claim is granted.

3. Entitlement to service connection for a depressive disorder

The Veteran claims entitlement to service connection for a depressive disorder.

The most persuasive evidence of record establishes that the Veteran has Major Depressive Disorder. See December 2017 Opinion of Dr. Levy (diagnosing Major Depressive Disorder); see also August 2016 VA Examination (diagnosing persistent depressive disorder with major depressive episodes).

With respect to his major depressive disorder, the overwhelming evidence supports that his depressive disorder has been caused by his service-connected disabilities. See December 2017 Opinion of Dr. Levy (opining that the Veteran has major depressive disorder that is related to his in-service experiences and his PTSD); September 2016 VA Examination (“The dx of Persistent Depressive Disorder is directly related to the dx of [Parkinson’s disease].”); August 2016 VA Examination (“All three diagnoses [including persistent depressive disorder, alcohol use disorder, and nightmare disorder,] are comorbid to the [Parkinson’s disease] diagnosis and progression of disease.”).

In light of the unanimous medical opinions, the Board finds that the Veteran’s major depressive disorder has been caused by his service-connected conditions.

Entitlement to service-connection for major depressive disorder as secondary to service-connected disabilities is granted.

4. Entitlement to service connection for anxiety

The Veteran has claimed entitlement to service connection for anxiety including as secondary to his psychiatric conditions and his Parkinson’s disease.

While the Veteran’s medical records and his own testimony document that he experiences anxiety, the medical records establish that his anxiety is a symptom of his service-connected PTSD and Parkinson’s disease, rather than a separate and distinct disability that should be service-connected. See, e.g., January 2018 Opinion of Dr. Cassano (“anxiety [is] due to his PD in conjunction with his service connected diagnosis of PTSD”); December 2017 Opinion of Dr. Levy (diagnosing PTSD and major depressive disorder, but not a separate anxiety disorder, and discussing anxiety as a symptom of PTSD); August 2016 VA Examination (“The anxiety symptoms discussed and observed during this evaluation is clearly related to the 12/2012 diagnosis of [Parkinson’s disease].”).

Consequently, the evidence is not in equipoise, but the greater weight of the evidence is against finding that the Veteran has a disability of anxiety separate and distinct from his service-connected PTSD, major depressive disorder, and Parkinson’s disease. Gilbert, 1 Vet. App. at 53-56. Because the Board finds that the Veteran did not have an anxiety condition, the criteria for establishing service connection have not been met. 38 C.F.R. § 3.303; Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (“In the absence of proof of a present disability there can be no valid claim.”); 38 C.F.R. § 4.125(a); see also Gilpin v. West, 155 F.3d 1353, 1355 (Fed. Cir. 1998). Entitlement to service connection for anxiety, to include as secondary to service-connected disabilities, is denied. To the extent his anxiety is a symptom of his service-connected conditions, that is contemplated within his ratings for those conditions.

5. Entitlement to service connection for sleep disturbances

The Veteran has claimed entitlement to service connection for sleep disturbances including as secondary to his psychiatric conditions and his Parkinson’s disease.

The Veteran’s medical records do establish a long history of sleep disturbances, with most medical professionals suggesting his sleep disturbances are symptoms of his service-connected PTSD, major depressive disorder, and/or Parkinson’s disease, rather than a separate and distinct disability. See January 2018 Opinion of Dr. Cassano (“sleep disturbances are due to his PD in conjunction with his service connected diagnosis of PTSD”); December 2017 Opinion of Dr. Levy (“Mental health symptoms from his PTSD include…sleep disturbance with nightmares…”); August 2016 VA Examination (“I am of the opinion the sleep difficulties are attributed to the current depression, anxiety, and alcohol abuse and reflect the difficulty accepting and adjusting to the PD.”).

However, his VA treatment notes from February 2016 reflect diagnoses of REM Sleep Behavior Disorder and insomnia, along with his Parkinson’s disease. REM Sleep Behavior Disorder remains on his current VA active problem list. Dr. Cassano indicated this condition is secondary to his Parkinson’s disease. 

Consequently, the evidence is at least in equipoise. While some medical professionals have classified the Veteran’s sleep disturbances as symptoms of other disorders, rather than a separate and distinct condition, other medical professionals have concluded he has a diagnosable sleep disorder secondary to his Parkinson’s disease. Gilbert, 1 Vet. App. at 53-56. The criteria for establishing service connection for sleep disturbances have been met. 

6. Entitlement to service connection for loss of smell

The Veteran has claimed entitlement to service connection for loss of smell including as secondary to his Parkinson’s disease.

Here, VA has previously made a factual finding that his loss of smell is due to his Parkinson’s disease. See January 2018 Statement of the Case (“A review of medical literature does however indicate that loss of sense of smell is commonly associated with Parkinson’s disease.”). The Board will not disturb that finding.

However, the medical evidence of record does not indicate that, at least as likely as not, the Veteran has a loss of smell. His treatment records are silent for loss of smell and the private opinion letter he submitted does not list loss of smell as one of the symptoms of his Parkinson’s disease. 

Consequently, the evidence is not in equipoise, but the greater weight of the evidence is against finding that the Veteran has a disability consisting of or characterized by loss of smell. Gilbert, 1 Vet. App. at 53-56. Because the Board finds that the Veteran did not have a condition consisting of or characterized by loss of smell, the criteria for establishing service connection for loss of smell have not been met. 38 C.F.R. § 3.303; Brammer, 3 Vet. App. at 225 (“In the absence of proof of a present disability there can be no valid claim.”); 38 C.F.R. § 4.125(a); see also Gilpin, 155 F.3d at 1355. Entitlement to service connection for loss of smell, to include as secondary to service-connected disabilities, is denied.

7. Entitlement to service connection for an eating disorder

The Veteran has claimed entitlement to service connection for an eating disorder including as secondary to his psychiatric conditions and his Parkinson’s disease.

The Veteran’s medical records do not establish that the Veteran, at least as likely as not, has any diagnosable eating disorder. His treatment records are silent for a diagnosis of or treatment for an eating disorder. The various VA examinations conducted in connection with this claim do not diagnose or mention an eating disorder. The Veteran has not provided any private opinion, identified any records, or otherwise suggested there is evidence that he has an eating disorder.

Consequently, the evidence is not in equipoise, but the greater weight of the evidence is against finding that the Veteran has a disability consisting of or characterized by an eating disorder. Gilbert, 1 Vet. App. at 53-56. Because the Board finds that the Veteran did not have a condition consisting of an eating disorder, the criteria for establishing service connection for an eating disorder have not been met. 38 C.F.R. § 3.303; Brammer, 3 Vet. App. at 225 (“In the absence of proof of a present disability there can be no valid claim.”); 38 C.F.R. § 4.125(a); see also Gilpin, 155 F.3d at 1355. Entitlement to service connection for an eating disorder, to include as secondary to service-connected disabilities, is denied.

Increased Rating

Disability evaluations are assigned to reflect levels of current disability. The appropriate rating is determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2.

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. When there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In evaluating claims for increased ratings, VA must evaluate the veteran’s condition with a critical eye toward the lack of usefulness of the body or system in question. 38 C.F.R. § 4.10.

VA has considered the level of the veteran’s impairment throughout the entire period on appeal, including the propriety of staged ratings. O’Connell v. Nicholson, 21 Vet. App. 89 (2007). 

In assigning disability ratings, the evaluation of the same disability under various diagnoses is to be avoided. See 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994); see also VA Gen. Coun. Prec. 9–2004 (Sep. 17, 2004) (“[T]he key consideration in determining whether rating under more than one diagnostic code is in order is whether the ratings under different diagnostic codes would be based on the same manifestation of disability or whether none of the symptomatology upon which the separate ratings would be based is duplicative or overlapping.”).

8. Entitlement to an initial evaluation in excess of 50 percent disabling for service-connected PTSD

The Veteran has argued that he is entitled to a 70 percent rating for his service-connected PTSD. See December 2018 Statement of Veteran’s Position.

In evaluating this claim, there are several factors that complicate the issue at this time. The Board has granted service connection for Parkinson’s disease and major depressive disorder. Those two conditions have not yet been rated and the evidence establishes that the symptoms for those conditions overlap. For example, the sleep disturbances and anxiety the Veteran experiences are symptomatic of some combination of his PTSD, Parkinson’s disease, and major depressive disorder. See, e.g., January 2018 Opinion of Dr. Cassano (“sleep disturbances are due to his PD in conjunction with his service connected diagnosis of PTSD”); December 2017 Opinion of Dr. Levy (“Mental health symptoms from his PTSD include…sleep disturbance with nightmares…”); August 2016 VA Examination (“I am of the opinion the sleep difficulties are attributed to the current depression, anxiety, and alcohol abuse and reflect the difficulty accepting and adjusting to the PD.”).

However, pursuant to the VA policy under the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), a Veteran’s choice for a faster decision should be respected to the extent possible. Although there are pyramiding concerns, the Board finds those concerns can be handled in assigning ratings for major depressive disorder and Parkinson’s disease in the first instance, while the Veteran’s request for a 70 percent rating for PTSD can be granted now. The Veteran should understand that symptoms that he argues warrant a 70 percent rating for PTSD will not form the basis for an additional or higher rating for his other service-connected conditions. 38 C.F.R. § 4.14.

With respect to the Veteran’s PTSD, psychiatric disorders are evaluated under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, Diagnostic Code (DC) 9440 (2017).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing effective work and social relationships.

A 70 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

A 100 percent disability evaluation is warranted where there is total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board’s primary consideration is a veteran’s symptoms, but it must also make findings as to how those symptoms impact a veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran’s impairment must be “due to” those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, length of remissions, and the veteran’s capacity for adjustment during periods of remission. 38 C.F.R. § 4.126(a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. Id. However, when evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation on the basis of social impairment. 38 C.F.R. § 4.126(b).

The most persuasive evidence of record establishes, as the Veteran argues, that a 70 percent rating, but no higher, is warranted for his service-connected PTSD. The Board will highlight the most relevant evidence that supports this rating.

The August 2016 VA examiner concluded that the Veteran’s psychiatric symptoms result in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and mood. This matches the 70 percent criteria for a psychiatric disorder. The examiner noted symptoms including depressed mood, anxiety, chronic sleep impairment, flattened affect, and thoughts to injure himself (though no imminent threat). The examiner also noted some documentation of hallucinations in the medical record along with diagnoses of PTSD. These symptoms and their overall functional impact closely track the 70 percent rating criteria. While the Board notes the examiner attributed the symptoms to multiple conditions other than PTSD, the Board finds that, consistent with other opinions discussed below, most of these symptoms and functional impacts are more properly attributed to PTSD (e.g., anxiety, sleep impairment, hallucinations).

The record also contains an opinion letter from a private psychologist. See December 2017 Opinion of Dr. Levy (diagnosing PTSD and Major Depressive Disorder and describing symptomatology and functional impact). Dr. Levy also concluded that the Veteran has occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and mood. The examiner noted these impairments were caused by symptoms such as frequent intrusive memories, physiological reactivity, detachment, restricted range of affect, increased arousal, hypervigilance, and a history of startle response. The examiner also noted reports of hallucinations. In addition, there were symptoms of both PTSD and major depressive disorder that overlapped, such as sleep disturbance, disturbances of motivation and mood, and loss of interest. The private psychologist also provided a detailed and accurate summary of the Veteran’s treatment records that support his findings and conclusions.

These opinions support awarding a 70 percent disability rating for PTSD.

The Veteran has not identified any evidence or presented any argument supporting a 100 percent rating for his PTSD. Moreover, as discussed above, the medical evidence, including the Veteran’s own expert, establishes that the Veteran has functional impairments, but not total occupational and social impairment. The Veteran’s PTSD symptoms and functional impairments do not meet or more closely approximate the criteria for any rating higher than 70 percent.

Entitlement to an initial evaluation of 70 percent disabling, but no higher, for service-connected PTSD is granted.

9. Entitlement to a total disability rating based on individual unemployability (TDIU)

The Veteran asserts entitlement to a total disability rating based on individual unemployability. See December 2018 Statement of Veteran’s Position (setting forth arguments and evidence in support of claim for TDIU).

Here, the Veteran has had a combined disability rating of 70 percent or higher throughout the appeal period. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. Moreover, the Board has granted service connection for additional disabilities including, most pertinently, Parkinson’s disease. Although the Parkinson’s disease has not been rated, the Board finds that resolution of the TDIU claim is appropriate on this record and will best serve the Veteran’s expressed interest in a fast resolution of the issue.

 

Because the Veteran meets the minimum combined rating to be eligible for a schedular TDIU, the question to be resolved is whether the Veteran is unable to secure and follow a substantially gainful occupation by reason of his service-connected disabilities. 38 C.F.R. § 4.16(b).

With respect to employment history, the Veteran indicated that he last worked in 2008 on his VA 21-8940, but noted employment until 2013 in his most recent submission. See December 2018 Statement of Veteran’s Position. In any case, the appeal period begins in 2014, so the Veteran has been unemployed throughout the appeal period. The Veteran was a teacher when he was employed and has a university degree. The Veteran also has training in computer network support.

Given the grant of service connection for Parkinson’s disease, there is ample evidence that the Veteran’s service-connected disabilities render him unemployable. The Veteran receives disability benefits from the Social Security Administration (SSA) due primarily to his Parkinson’s disease. See April 2014 SSA Disability and Determination Transmittal (noting primary diagnosis of Parkinson’s disease renders the Veteran unemployable and attaching medical records establishing the diagnosis and symptomatology). In addition, the Veteran’s treating physician has opined that his Parkinson’s disease renders him unable to work. See September 2014 VA 21-0960C-1 (Parkinson’s DBQ). In addition to the Veteran’s symptoms from Parkinson’s disease, the Veteran’s ability to work is affected by his PTSD as well. The medical evidence relating to the impact of his psychiatric condition on his occupational functioning has been discussed above. See December 2017 Opinion of Dr. Levy; August 2016 VA Examination. The effects are significant, including occupational impairment with deficiencies in most areas, including severe impairments in the ability to communicate, remember, and follow instructions.

This evidence establishes that, as likely than not, the combination of the Veteran’s service-connected conditions rendered him unemployable. See 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). Accordingly, his claim of entitlement to TDIU is granted. 

The Board notes that, at this time, it is the combination of his physical and mental disabilities, rather than any single disability, that renders the Veteran unemployable. Consequently, although the Board has considered entitlement to special monthly compensation (SMC), it is not warranted on this record. See Bradley v. Peake, 22 Vet. App. 280, 293-94 (2008); 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i). However, if appropriate, entitlement to SMC should be considered by the RO when assigning ratings for the conditions for which the Veteran has been granted entitlement to service connection in this decision (i.e., Parkinson’s disease, major depressive disorder, and erectile dysfunction).

REASONS FOR REMAND

1. Entitlement to service connection for gastritis with esophagitis is remanded.

The issue of entitlement to service connection for gastritis was reopened by the RO and that favorable finding will not be reviewed by the Board. The matter is reopened. Further development is required, however, prior to adjudication on the merits.

The issue of entitlement to gastritis is remanded to correct a duty to assist error that occurred prior to the September 2016 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to that rating decision. However, based on the evidence associated with the claims file prior to the September 2016 rating decision, the Board finds that a VA examination/medical opinion is required to determine whether gastritis is related to service. See January 2018 Statement of the Case (noting a September 2016 treatment note with addendum that indicates “possible etiologies could be intra-abdominal adhesions” related to the service-connected gunshot wound).

Remand for an examination is necessary.

 

The matter is REMANDED for the following action:

Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any abdominal conditions including colon polyps, gastritis, esophagitis, and/or constipation. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, including the service-connected gunshot wound. 

 

MICHELLE L. KANE

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Kerry Hubers, Counsel