Citation Nr: 1725250 
Decision Date: 06/15/17 Archive Date: 07/17/17

DOCKET NO. 07-35 445 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

1. Entitlement to service connection for hypertension, to include as secondary to service-connected disabilities and herbicide exposure. 

2. Entitlement to service connection for glaucoma, to include as secondary to service-connected disabilities.

3. Entitlement to service connection for a right shoulder disability, to include as secondary to a service-connected left shoulder disability.

4. Entitlement to service connection for a lumbar spine disability. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Catherine Cykowski, Counsel

INTRODUCTION

The Veteran had active duty service from July 1969 to August 1971, including service in Vietnam from January 1970 to December 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. 

In March 2014, the Board remanded the issues of entitlement to service connection for glaucoma, a lumbar spine disability, and a right shoulder disability for additional development and readjudication. The requested development has been completed, and the case has been returned to the Board for appellate review.

The issues of entitlement to service connection for glaucoma and entitlement to service connection for a lumbar spine disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. It is as likely as not that the Veteran's hypertension is caused by his 
service-connected PTSD.

2. Resolving all doubt in the Veteran's favor, his current right shoulder disability, diagnosed as degenerative joint disease of the right shoulder and right shoulder tear, is proximately due to his service-connected left shoulder disability.


CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension are met. 38 U.S.C.A. 
§§ 1110, 5107(b) (West 2016); 38 C.F.R. § 3.102, 3.310 (2016).

2. Service connection for degenerative joint disease of the right shoulder and right shoulder tear is warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2016); 38 C.F.R. 
§ 3.102, 3.310 (2016)


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Criteria 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016). 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).
Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including hypertension, are presumed to have been incurred in service if manifest to a compensable degree (10 percent disabling) within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

In addition if a veteran was exposed to an herbicide agent during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, certain diseases shall be service-connected, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113 and 38 C.F.R. § 3.307 (d) are also satisfied. 38 C.F.R. § 3.309 (e). However, hypertension is not on the list of presumptive conditions associated with Agent Orange exposure. 38 C.F.R. § 3.309 (e).

Notwithstanding the provisions relating to presumptive service connection, a Veteran may establish service connection for a disability with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 
38 C.F.R. § 3.310 (a) (2016). Establishing service-connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. See 38 C.F.R. § 3.310 (a); see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). When aggravation of a Veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, the Veteran shall be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen, supra.

To prevail on the issue of secondary service causation, the record must show 
(1) evidence of a current disability, (2) evidence of a service-connected disability, and (3) medical nexus evidence establishing a connection between the current disability and the service-connected disability. Wallin v. West, 11 Vet. App. 509, 512 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995).

The Board must determine whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either case, or whether the preponderance of the evidence is against the claim, in which case the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016).

Service Connection for Hypertension

The Veteran served on active duty in the Army from July 1969 to August 1971. The Veteran contends that he was exposed to herbicides while on active duty service. Alternatively, he argues that his service-connected diabetes mellitus, type II, and/or his PTSD caused or aggravated his hypertension.

Service treatment records show that, at the Veteran's April 1971 separation examination, his blood pressure was 120/70.

In April 2008, the Veteran was afforded a VA examination. The Veteran reported that he was diagnosed with hypertension in 1974. The VA examiner diagnosed the Veteran with hypertension. The examiner found no evidence of diabetes mellitus type II on examination and provided no etiological opinion for the Veteran's hypertension. 

The Veteran had a VA examination in February 2012. The VA examiner noted the evidence that the Veteran's claims file showed that he was diagnosed with hypertension in February 1990. The VA examiner found that there was a lack of evidence of high blood pressure readings or diagnosis in the Veteran's military records, that the VA records had evidence of hypertension since 1990, and that hypertension was not a disease associated with exposure to certain herbicide agents. Therefore, the examiner concluded that the Veteran's hypertension did not have its clinical onset during service, and it was not at least as likely as not related to the Vteran's period of service, to include exposure to herbicides. The February 2012 VA examiner did not discuss the NAS findings. 

In March 2014, the Board remanded the case for another examination. The Veteran was afforded a VA examination in April 2014. The VA examiner found that the Veteran's hypertension was less likely as not incurred in or caused by his service, including herbicide exposure. The VA examiner's opinion relied on the lack of a hypertension diagnosis or high blood pressure readings in the Veteran's military records as well as the finding that hypertension was not a disease associated with exposure to certain herbicide agents. The April 2014 VA examiner did not discuss the NAS and did not discuss whether the Veteran's service-connected disabilities caused or aggravated his hypertension. 

In May 2015, the Board requested a VHA medical opinion addressing the etiology of hypertension, both secondary to Agent Orange exposure and to service-connected disabilities. 

In an April 2017 opinion, a VA cardiologist noted that the Veteran was on several medications for diabetes mellitus and hypertension. He did not have a family history of kidney or heart disease. Upon his pre-induction examination, he denied having any major medical complaints, including no hypotension of hypertension, glycosuria, albuminuria, hematuria, dysuria, or urinary frequency. He denied seeing a physician during the 5 years before the pre-induction examination. During a disability evaluation in August 2001, he reported that he had difficulty sleeping due to pain in his hands and arms as well as fear and anxiety. He also noted a change in his social life since returning from Vietnam. 

The examiner noted that the Veteran was presumed to have been exposed to an herbicide agent. The examiner opined that, until more conclusive evidence is available, it would be difficult to determine if the use of herbicide agents is causative of hypertension, which is a prevalent medical condition. The examiner opined that it is therefore less likely than not that hypertension is related to herbicide exposure. 

Next, the examiner addressed the relationship between diabetes and hypertension. The examiner opined that the association of diabetes as a risk factor for hypertension is mainly based on the effect of diabetes on increasing peripheral vascular resistance as well as diabetic nephropathy causing kidney disease. The examiner noted that, in these cases diabetes should precede the development of hypertension. The examiner noted that that did not appear to be the case here, as the Veteran was found to have hypertension but not diabetes during his examination in 2008, per available records. The examiner therefore concluded that, although there is an association between the development of these disorders, it is less likely as not that that the Veteran's hypertension was caused or aggravated by his diabetes mellitus, type II. 

The examiner noted that the Veteran's service-connected PTSD appeared to have affected his quality of sleep. The examiner noted that PTSD has been associated with hypertension, as has insomnia, so it is at least as likely as not that the Veteran's hypertension was caused or aggravated by his service-connected PTSD. 

In April 2017, a VA psychologist provided an opinion regarding the relationship between hypertension and PTSD. The examiner noted that, generally, the research reviewed indicates that there is an association among having a diagnosis of PTSD and having a diagnosis of hypertension. The examiner explained that there is longitudinal data that indicate that having a diagnosis of PTSD increases one's risk of developing hypertension. The examiner concluded however, that he could not say that it was "at least as likely as not" that the Veteran's hypertension was caused or permanently aggravated by his service-connected PTSD. 

After a careful review of the record, all doubt is resolved in favor of the Veteran that hypertension is related to the Veteran's service-connected PTSD. See 38 C.F.R. § 3.102. Therefore, the claim for service connection for hypertension is granted.

Service Connection for a Right Shoulder Disability

The Veterans seeks service connection for a right shoulder disability secondary to his service-connected left shoulder disability. He asserts that he has had to use his right shoulder more to compensate for his left shoulder due to the pain in his left shoulder. He asserts that he was unable to lift heavy weight using his left shoulder, resulting in overuse of his left shoulder See Appellant's Brief, March 3, 2015. 

Post-service treatment records reflect that the Veteran underwent surgery on his right shoulder rotator cuff repair in 2007. 

A January 2008 VA examination noted a diagnosis of right shoulder rotator cuff tear and repair. The examiner opined that the Veteran's left shoulder disability does not cause his right shoulder disability. The examiner noted that the Veteran is right-handed, and it is normal for him to use his right shoulder predominantly. 

The Veteran had a VA examination in February 2012. The Veteran reported a history of right shoulder surgery in 1997. On examination, his complaints included constant right shoulder pain, which was worse with overhead activities. The examiner diagnosed degenerative joint disease of the right shoulder and supraspinatus tear of the right shoulder. The examiner noted that the Veteran used to work as a butcher, which required a lot of repetitive motion and strength of his dominant right upper extremity. The examiner opined that the Veteran's right shoulder disability had not undergone a permanent increase in severity due to his right shoulder disability. The examiner reasoned that the Veteran was able to perform his work as a butcher until 2007, when he had his first right shoulder surgery due to a tear of the supraspinatus tendon. The examiner explained that degenerative changes of the anterior and posterior labrum are due to the normal aging process. 

The Veteran is competent to report that he was unable to lift using his left shoulder and used his right shoulder more often to lift heavy objects. The February 2012 medical opinion supports a finding that the Veteran's right shoulder disability is related to overuse, as the examiner noted repetitive use of his right shoulder. When considered in conjunction with the Veteran's competent and credible statement that he used his right shoulder more often due to left shoulder pain, the opinion supports a relationship between the service-connected left shoulder disability and his current right shoulder disability. Accordingly, service connection for a right shoulder disability is warranted. 



ORDER

Service connection for hypertension is granted.

Service connection for degenerative joint disease of the right shoulder is granted. 


REMAND

Additional development is necessary with regard to the claims for service connection for glaucoma and service connection for a lumbar spine disability. 

In February 2012, a VA examiner opined that glaucoma is not caused or aggravated by diabetes mellitus. The examiner reasoned the diabetes mellitus was diagnosed in 2008, while glaucoma was diagnosed in 2006. In light of the grant of service connection for hypertension, the case is being remanded to obtain an addendum opinion from the examiner to address whether glaucoma is caused or aggravated by hypertension.

In a November 2007 statement, the Veteran asserted that his current lumbar spine disability is related to trauma that occurred during an ambush in Cambodia. He stated that he is not asserting that his lumbar spine disability is related to his left shoulder disability. The Veteran received the Combat Infantryman Badge (CIB). His November 2007 statement provides competent and credible evidence of a back injury in combat. 38 U.S.C.A. § 1154 (a); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The Veteran had VA examinations of the lumbar spine in August 2002 and April 2006. The August 2002 VA examiner diagnosed degenerative joint disease of the thoracolumbar spine. In April 2006, the VA examiner diagnosed lumbar myositis and degenerative disc disease. The examiner opined that the Veteran's lumbar spine disability is related to a job-related injury in 1994. The examiner opined that the lumbar spine disability is not caused by a left shoulder disability. 

The April 2006 examination did not consider the complete history of lumbar spine symptoms. Although there is documentation of a work injury in 1994, the Veteran complained of back pain prior to 1994. An October 1988 VA outpatient record reflects that the Veteran reported a "long history of back pain." The examiner did not address the Veteran's reported history of a back injury in combat or his history of back pain prior to 1994. Therefore the August 2006 examination is inadequate for rating purposes. A new VA examination is necessary to address the etiology of the Veteran's lumbar spine disability. 

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the February 2012 eye examiner for an addendum opinion. If the February 2012 examiner is not available, the addendum should be completed by a similarly qualified physician. The claims file and a copy of this remand must be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of these materials in any reports generated. After reviewing the claims file, the examiner should address the following questions.

(a) Is glaucoma at least as likely as not proximately caused by, or due to, hypertension?

(b) Is glaucoma at least as likely as not aggravated (worsened) by hypertension?

The examiner should provide a complete rationale for all opinions expressed. If an opinion cannot be provided without resorting to speculation the examiner should explain why it is not possible to provide an opinion.

2. Schedule the Veteran for a VA examination of his lumbar spine. The claims file and a copy of this remand must be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of these materials in any reports generated. After reviewing the claims file, the examiner should address the following questions.

(a) Record all lumbar spine diagnoses shown on examination.

(b) Provide a detailed history of the Veteran's history of lumbar spine symptoms during and since separation from service.

(c) Provide an opinion as to whether a current lumbar spine disability at least as likely as not (50 percent or greater likelihood) that a lumbar spine disability had its onset in service or is related to an event during active service? 

In rendering the opinion, the examiner should accept as true, for purposes of the examination only, the Veteran's reports of a back injury during an ambush in Cambodia.

The examiner should provide a complete rationale for all opinions expressed. If an opinion cannot be provided without resorting to speculation the examiner should explain why it is not possible to provide an opinion.

3. Then, readjudicate claims on appeal. If the benefits sought on appeal remain denied, the Veteran and his representative will be issued an appropriate supplemental statement of the case and afforded the opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs