﻿Citation Nr: AXXXXXXXX
Decision Date: 03/18/19 Archive Date: 03/18/19

DOCKET NO. 181210-1186
DATE: March 18, 2019

ORDER

1. Service connection for right knee strain as secondary to service-connected bilateral shin splints with mild right knee impairment is granted.

2. Service connection for bilateral hearing loss is denied.

3. Service connection for right ankle strain and residuals of right ankle fracture with surgical repair (claimed as right ankle pain and weakness), to include as secondary to two service-connected right foot disabilities (residuals of right foot stress fracture with removal of Morton’s neuroma and residuals of right foot fracture of the second metatarsal), is denied.

4. Service connection for sleep apnea, to include as secondary to two service-connected right foot disabilities, is denied.

FINDINGS OF FACT

1. The Veteran has a current disability of right knee strain, as well as a current service-connected disability of bilateral shin splints with mild right knee impairment.

2. The Veteran’s current right knee strain is related to service-connected bilateral shin splints. 

3. The Veteran currently has bilateral sensorineural hearing loss to an extent recognized as a disability for VA purposes.

4. The Veteran had moderate exposure to loud noise while on active duty as a military police officer handling firearms, causing acoustic trauma (injury).

5. The current bilateral hearing loss is not related to the in-service loud noise.

6. The Veteran has a current disability of right ankle strain and right ankle fracture with surgical repair.

7. The right ankle disabilities did not manifest during service and are not causally or etiologically related to service. 

8. The two service-connected right foot disabilities (residuals of right foot stress fracture with removal of Morton’s neuroma and residuals of right foot fracture of the second metatarsal) did not cause or worsen in severity the current right ankle strain or right ankle fracture with surgical repair.

9. The Veteran is currently diagnosed with sleep apnea. 

10. Sleep apnea symptoms did not manifest during service, and the current sleep apnea is not causally or etiologically related to service.

11. Sleep apnea is not caused or worsened in severity by the two service-connected right foot disabilities.

12. The service-connected disabilities did not cause obesity, and obesity did not cause sleep apnea.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, the criteria for service connection for right knee strain as secondary to the service-connected bilateral shin splints is granted. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

2. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1131, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

3. The criteria for service connection for right ankle strain and residuals of right ankle fracture with surgical repair (claimed as right ankle pain and weakness), to include as secondary to two service-connected right foot disabilities (residuals of right foot stress fracture with removal of Morton’s neuroma and residuals of right foot fracture of the second metatarsal), have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

4. The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decisions on their claims to seek review. The Veteran in the present case chose to participate in VA's test program, which is the Rapid Appeals Modernization Program (RAMP). As such, this Board of Veterans’ Appeals (Board) decision has been written to be consistent with the new AMA framework. 

In December 2018, the Veteran opted for direct review by the Board in a RAMP appeal. Direct review is the appeal option to the Board in which a Board decision is issued based on evidence of record at the time of the prior decision. The Board cannot hold a hearing or accept into the record additional evidence in its direct review.

In January 2019, the Veteran attempted to change the review option to a hearing with evidence submission allowed; however, under RAMP, a veteran is not permitted to change the selected review option, according to Board policy. The Board has authority to make such a policy decision under RAMP, which was authorized under Section 4 of AMA and gave VA broad authority to run a test program prior to implementation of AMA. 

In January 2019, the Veteran submitted evidence to the claims file (a private audiometric assessment with a positive nexus opinion linking military service to current hearing loss, dated January 2019). This was during a period of time when under RAMP new evidence was not allowed under the direct review option; therefore, the Board may not consider this evidence in the current RAMP decision. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). 

The Veteran, however, may file a supplemental claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a supplemental claim are attached to this decision.

The Veteran served on active duty in the United States Marine Corps from March 1976 to March 1979 during Peacetime. 

This matter is before the Board of Veterans’ Appeals (Board) on appeal from a higher-level review rating decision, dated November 2018, which denied service connection for bilateral hearing loss, right ankle sprain, right knee sprain, and sleep apnea. 

Service Connection Legal Authority

Direct service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a).

Secondary service connection may be established for a disability that is proximately due to or the result of service-connected disease or injury. In such instance, service connection shall be granted as secondary to the disability for which VA benefits were initially established. 38 C.F.R. § 3.310(a); see Harder v. Brown, 5 Vet. App. 183, 187 (1993). The Veteran may also obtain compensation for the aggravation of a nonservice-connected condition by a service-connected disability. See 38 C.F.R. § 3.310(a); see Allen v. Brown, 7 Vet. App. 439, 448 (1995). 

To prevail under a theory of secondary service causation, the record must show (1) evidence of a current disability, (2) evidence of a service-connected disability, and (3) medical nexus evidence establishing a connection between the current disability and the service-connected disability. Wallin v. West, 11 Vet. App. 509, 512 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995). Any increase in the severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disability, will be itself service connected. 38 C.F.R. § 3.310(b).

1. Service connection for right knee strain is granted.

The Veteran contends that right knee strain should be service-connected either on a direct or secondary basis.

The Board finds that the evidence in the record supports service connection for right knee strain secondary to service-connected bilateral shin splints with mild right knee impairment.

The AOJ found that the Veteran has a current disability of right knee strain, as well as a current disability of bilateral shin splints. See October 2016 DBQ.

STRs noted an in-service diagnosis of right knee strain, as well as a separate stress fractures/bilateral shin splints diagnosis, dated October 1967. In the March 1979 service medical discharge examination, however, no knee problems are noted. In the October 2016 DBQ, the assessing physician indicated that the current knee strain is not related to the strain noted in-service and that the STRs do not diagnose a chronic knee problem. 

Although the assessing physician indicated in the October 2016 DBQ an inability to determine if the bilateral shin splints were related to the current right knee strain, the AOJ subsequently service connected the Veteran for bilateral shin splints with mild right knee impairment, following the DBQ. This suggests a favorable finding that the current right knee strain is related to the service-connected bilateral shin splints. 

Accordingly, upon consideration of all information and lay and medical evidence of record in this matter, the Board finds that the evidence is at least in equipoise on the question of whether the current right knee strain is secondarily related to the service-connected bilateral shin splints. Resolving reasonable doubt in favor of the Veteran, the criteria for service connection for right knee strain as secondary to the service-connected bilateral shin splints is granted. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Service connection for bilateral hearing loss is denied.

The Veteran contends that bilateral hearing loss began in service and should be service-connected. 

The agency of original jurisdiction (AOJ) found that the Veteran has current bilateral sensorineural hearing loss to an extent recognized as a disability for VA purposes.

The Board finds that the Veteran had moderate exposure to loud noise while on active duty as a military police officer handling firearms, causing acoustic trauma (injury).

The Board further finds that the in-service acoustic injury is not related to the Veteran’s current bilateral hearing loss. In the October 2016 Hearing Loss and Tinnitus DBQ, the audiologist rendered a negative nexus opinion. The rationale for the opinion was that the audiograms at the time of both entrance in March 1976 and discharge in March 1979 showed hearing thresholds within normal limits. The audiologist also found that there were no significant changes in hearing sensitivity during service, thus, there is no medical evidence in the record linking military service with the current bilateral sensorineural hearing loss. The audiologist noted that the Veteran reported having tinnitus after service. 

As discussed above, the Board notes that the Veteran submitted new evidence—a private audiological assessment with a positive nexus opinion—after the time period allowed under RAMP direct review. While the Board cannot consider the new evidence in the present case under RAMP review policy, the Veteran may file a supplemental claim under the AMA, which became effective February 19, 2019. See Attached Instructions. 

Accordingly, upon consideration of all information and lay and medical evidence of record in this matter, the Board finds that the preponderance of the evidence the Board is permitted to review under RAMP review is against entitlement to service connection for bilateral hearing loss. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

3. Service connection for right ankle disabilities (claimed as right ankle pain and weakness) is denied.

The Veteran contends that the current right ankle disabilities should be service connected either on a direct or secondary basis. 

The Board finds that the current right ankle disabilities did not begin in service and are not otherwise related to service. 

The AOJ found that service treatment records, dated June 1976 and October 1976, noted ankle swelling. 

Although the STRs noted numerous complaints of ankle swelling with pain in-service, there was no ankle disability diagnosis, such as strain or sprain, and a January 1977 STR reported bilateral ankle x-rays with normal results. At the March 1979 service medical discharge examination, no ankle problems were noted. 

After service in April 2002, the Veteran fractured the right ankle and required surgery. See VA Medical Treatment Records. After breaking the right ankle after service, the Veteran reported recurrent right ankle pain and weakness. See id. Thus, in the October 2016 DBQ, the assessing physician opined that the current right ankle disabilities could not be linked to service; rather, the current disabilities are more likely than not related to the post-service right ankle fracture.

The Veteran alternatively contends that service connection for the current right ankle disabilities should be granted as secondary to two service-connected right foot disabilities—residuals of right foot stress fracture with removal of Morton’s neuroma and residuals of right foot fracture of the second metatarsal. 

The Board finds that the weight of the evidence current right ankle disabilities are not related to the service-connected right foot disabilities. The November 2001 x-rays of both feet were normal and showed that the right foot disabilities resolved, although the Veteran reported pain, weakness, stiffness, and swelling in the right foot (with no mention of ankle problems). See VA Medical Treatment Records, including the November 2001 VA Examination. Again, in the October 2016 DBQ, the assessing physician clearly attributed the Veteran’s current right ankle disabilities to the ankle fracture post-service in 2002. Significantly, the right foot disabilities have had low disability ratings of 10 percent and 0 percent for several years. There evidence in the record does not indicate that the right foot disabilities led to a weakened right ankle, causing the fall, as asserted by the Veteran.

While the Veteran is competent to provide lay statements regarding symptoms, under the facts of this case, the Veteran is not competent to assess medical conditions causing disabilities. The Veteran lacks the necessary education, training, and experience necessary to make such assessments. As such, the Boards finds the Veteran’s lay statements about causation of the right ankle fracture to be of no probative value. 

Accordingly, upon consideration of all information and lay and medical evidence of record in this matter, the Board finds that the preponderance of the evidence is against entitlement to service connection for any right ankle disability on a direct or secondary basis. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

4. Service connection for sleep apnea is denied.

The Veteran contends that sleep apnea should be service-connected either on a direct or secondary basis. 

The AOJ found that the March 1976 medical entrance examination noted that the Veteran had frequent trouble sleeping. 

The Board finds that the Veteran has a current disability of sleep apnea, which was diagnosed in January 2016, approximately 37 years after discharge from service. See VA Medical Treatment Records. 

The Board further finds that sleep apnea did not begin in service and is not otherwise related to service. There are no STRs noting any complaints of or treatment for the symptoms of sleep apnea, nor is there a diagnosis. The March 1976 medical entrance examination referenced above noted that the Veteran had trouble sleeping, but did not reference any sleep disabilities. 

A May 2017 written lay statement from the Veteran’s friend and former co-worker (received June 2017) reported that the Veteran seemed to have difficulty falling asleep but does not identify signs of sleep apnea. The Veteran’s friend wrote that he was stationed with the Veteran at the Naval Air Station at Whidbey Island in Oak Harbor, Washington, and roomed with the Veteran then and also after service, and, therefore, had the opportunity to observe the Veteran sleeping. The reported trouble falling asleep is not enough to show incurrence of sleep apnea. Notably, the Veteran’s friend did not report observing apnea, which Dorland’s Medical Dictionary defines as “cessation of breathing,” and is a major symptom of sleep apnea. Because there is no in-service manifestation of sleep apnea, the Board denies service connection on a direct basis. 

The Veteran alternatively contends that service connection for sleep apnea should be granted as secondary to two service-connected right foot disabilities—residuals of right foot stress fracture with removal of Morton’s neuroma and residuals of right foot fracture of the second metatarsal—which prevented exercise due to pain and led to obesity, which in turn caused sleep apnea. See July 2018 Notice of Disagreement. 

The Board finds that the weight of the evidence demonstrates that sleep apnea was not caused or worsened in severity by the two service-connected right foot disabilities. November 2001 x-rays showed that these disabilities resolved, although the Veteran reported pain, weakness, stiffness, and swelling in the right foot (with no mention of ankle problems). See VA Medical Treatment Records, including the November 2001 VA Examination. 

According to VA treatment records, in April 2002, the Veteran fell and broke the right ankle several years after military discharge in 1979. Subsequent medical treatment records show non-service-connected right ankle problems. The weight of the evidence is against finding that the service-connected foot disabilities caused the obesity. Notably, the two service-connected foot disabilities are not severe and are not likely to prevent all exercise, as suggested by the Veteran. The residuals of right foot stress fracture with removal of Morton’s neuroma has had a disability rating of just 10 percent since February 2001 and residuals of right foot fracture of the second metatarsal has a disability rating of 0 percent since July 2004. 

The Board further finds that the medical evidence does not show that obesity caused sleep apnea. See VA Medical Treatment Records. While the VA medical treatment records noted that weight loss would decrease the severity of sleep apnea, none of the medical records in the casefile report that obesity caused sleep apnea. The record, therefore, does not show a chain of causation between the service-connected disabilities, obesity, and the separate, current disability of sleep apnea. See VAOPGCPREC 1-2017 (stating that while obesity per se is not a disability subject to service connection, obesity may be an "intermediate step" between a service connected disability and a current disability that may be service-connected on a secondary basis under 38 C.F.R. § 3.310(a)). 

The Veteran contends that weight gain was the result of the service-connected right foot disabilities because the disabilities caused pain while exercising, resulting in significant weight gain, which led to sleep apnea. While the Veteran is competent to provide lay statements regarding symptoms, under the facts of this case, the Veteran is not competent to address the etiology of complex medical disorders like sleep apnea. The Veteran lacks the necessary education, training, and experience necessary to make such assessments. As such, the Boards finds the Veteran’s lay statements about causation of sleep apnea to be of no probative value. 

(Continued on the next page)

 

Accordingly, upon consideration of all information and lay and medical evidence of record in this matter, the Board finds that the preponderance of the evidence is against entitlement to service connection for sleep apnea on a direct or secondary basis, and the claim must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

 

J. PARKER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Miller, Associate Counsel